LESLIE J. HUGHES (Col. Bar No. 15043)
Email:  HughesLJ@sec.gov
JACQUELINE M. MOESSNER (N.Y. Bar No. 4456521)
Email:  MoessnerJ@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, Colorado 80294-1961
Telephone:   (303) 844-1000
Facsimile:    (303) 297-3529

LOCAL COUNSEL:
DOUGLAS M. MILLER (Cal. Bar No. 240398)
Email:  MillerDou@sec.gov
Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    vs.<br><br>DAVID HOWARD WELCH,<br>MARC JAY BRYANT,<br>JOHN CHARLES KNIGHT,<br>PERRY DOUGLAS WEST,<br>BIO-GLOBAL RESOURCES, INC.,<br>DIVERSIFIED EQUITIES INC.,<br>DIVERSIFIED EQUITIES<br>DEVELOPMENT, INC.,<br> and NEW GLOBAL ENERGY INC.,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933, as amended ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934, as amended ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a).

2.     Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

3.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a). Certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  In addition, venue is proper in this district because the Defendants either reside in, or transacted business within, this district, including the sale of securities to investors that resided in this district.

## SUMMARY

4.     This case involves numerous individuals and entities acting as broker-dealers – including operating a boiler room "cold-calling" operation – despite failing to register with the SEC in violation of Section 15(a) of the Exchange Act.   In addition, all of the Defendants, operating through a web of controlled entities, sold stock in two successive companies to the public in unregistered transactions in violation of Sections 5(a) and 5(c) of the Securities Act, thereby depriving investors of important and legally required information.  Through their illegal plan the Defendants effected millions of dollars of securities transactions in the stock of two entities:  Global Energy Technology Group, Inc. ("Global Energy") and Defendant New Global Energy, Inc. ("New Global").

5.      From 2011through 2015, Defendants David Howard Welch, Marc Jay Bryant, and John Charles Knight, through various shell companies including Vertex International Group, LLC ("Vertex"), Bechtel Advisory Group, Inc. ("Bechtel"), and Defendants Bio-Global Resources, Inc. ("Bio-Global"), Diversified Equities Inc. ("DEI"), and Diversified Equities Development Inc. ("DED"), acted as brokers and dealers effecting transactions in the securities of Global Energy, New Global and other companies, while these Defendants were not registered, or associated with broker-dealers registered, with the SEC.

6.      Welch and Bryant used Bio-Global to acquire millions of shares of Global Energy and New Global directly from the companies.  Welch, Bryant, and Bio-Global then used a series of shell companies to solicit investors to purchase the shares.

7.      Starting in November 2011, they used Vertex as a broker to solicit and sell Global Energy stock to investors, and transferred shares to Vertex to complete the sales.  In March 2013, they discontinued using Vertex and began using Bechtel as the broker to solicit and sell the remainder of the Global Energy shares held in Vertex's name.  Mid-year 2013, Welch, Bryant, and Bio-Global transitioned from selling Global Energy shares to New Global shares.

8.      Welch, Bryant, Knight, and Bio-Global used Bechtel and DEI to solicit and sell New Global shares and Bio-Global transferred shares to DEI to complete the sales.  By the end of 2013, Welch, Bryant, Knight, and Bio-Global stopped using Bechtel, and focused their sales activities through DEI.  In March 2014, Welch, Bryant, Knight, and Bio-Global began using DED, in addition to DEI, to solicit and sell New Global shares held in DEI's name.  By the end of 2014, Welch, Bryant, Knight, and Bio-Global used only DED to solicit and sell the remainder of the New Global common and preferred shares held in the name of DEI or DED.

9.    This chart visually depicts the flow of stock and money among the various entities:



10. From their sales of the securities of Global Energy and New Global, the Welch, Bryant, Knight, Bio-Global, DEI and DED raised over ten million dollars from more than 500 investors. As a result of conduct alleged in this Complaint, these Defendants violated the broker-dealer registration provisions of Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

11. All of the Defendants violated the securities offering registration provisions of the Securities Act. From 2012 through 2015, all Defendants, directly or indirectly, offered and sold securities of Global Energy or New Global when no registration statement was filed or in effect with the SEC and no exemption from registration applied. As a result of conduct alleged in this Complaint, each of the Defendants violated the securities offering registration provisions of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) and (c).

## THE DEFENDANTS

12. David Howard Welch (A/K/A David Howard Bryant) ("Welch") is an individual that resides in Palm Desert, California, and transacts business, including the offer or sale of securities as detailed in this Complaint, within this judicial district and throughout the United States. Welch is the brother of Marc Bryant.

13. Marc Jay Bryant (A/K/A Marc Jay Welch) ("Bryant") is an individual that resides in Chatsworth, California and transacts business, including the offer or sale of securities as detailed in this Complaint, within this judicial district and throughout the United States. Bryant is the brother of David Welch.

14. John Charles Knight ("Knight") is an individual that resides in Longmont, Colorado, and transacts business, including the offer or sale of securities as detailed in this Complaint, within this judicial district and throughout the United States.

15. Perry Douglas West ("West") is an individual that resides in Cocoa, Florida and is an attorney admitted to practice law in Florida. He transacts business, including the offer or sale of securities as detailed in this Complaint, within this

1    judicial district and throughout the United States.

2        16.    Bio-Global Resources Inc. ("Bio-Global") was incorporated in Texas in

3    2008 and re-incorporated in Wyoming in 2011.  Bio-Global operates from its

4    principal place of business in Palm Desert, California.  It transacts business by

5    offering or selling securities including Global Energy and New Global, as detailed in

6    this Complaint, within this judicial district and throughout the United States.  Welch

7    and Bryant are officers or directors of Bio-Global.

8        17.    Diversified Equities Inc. ("DEI") was incorporated in Colorado in May

9    2013.  DEI operates from its principal place of business in Boulder, Colorado.  It

10   transacts business by offering and selling securities, as detailed in this Complaint,

11   within this judicial district and throughout the United States.  Knight is an officer and

12   director of DEI.

13       18.    Diversified Equities Development Inc. ("DED") was incorporated in

14   Nevada in November 2013 and reincorporated in California in October 2014.  DED

15   operated "boiler-room" call centers for sales agents in Northridge and Encino,

16   California, and in Costa Rica.  It transacts business by offering and selling securities,

17   as detailed in this Complaint, within this judicial district and throughout the United

18   States.  Bryant and Knight are officers or directors of DED.

19       19.    New Global Energy, Inc. ("New Global" or "NGEY") was incorporated

20   in Wyoming 2012.  New Global operates from its principal place of business in

21   Brevard County, Florida and owned tilapia fish farms in Thermal and Mecca,

22   California.  It transacts business by offering or selling securities, as detailed in this

23   Complaint, within this judicial district and throughout the United States.  At all

24   relevant times herein, West was the chief executive officer ("CEO") of New Global.

25       20.    New Global's common and preferred stock are securities as defined in

26   Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act, 15

27   U.S.C. §§ 77b(a)(1) & 78c(a)(10).  New Global's commons stock traded in the over-

28   the-counter market under the symbol "NGEY."  At certain times relevant to the

Complaint, the common stock of New Global was a "penny stock" as defined in 15 U.S.C. § 78c(a)(51).

## OTHER RELEVANT ENTITIES

21.    Global Energy Technology Group, Inc. ("Global Energy" or "GETG") was a Nevada corporation formed in 2009 with its principal place of business in Dallas, Texas.  Global Energy was a private company purportedly in the business of creating renewable bio-fuel using jatropha trees, and later operating tilapia fish farms in California.  From approximately January 2010 until June 2012, West was the CEO of Global Energy.  GETG sold all of its assets to New Global in September 2014, its Texas business license expired in January 2015, and it is no longer operating.

22.    Global Energy's common stock is a security as defined in Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act, 15 U.S.C. §§ 77b(a)(1) & 78c(a)(10).  At all relevant times to the Complaint, the common stock of Global Energy was a "penny stock" as defined in 15 U.S.C. § 78c(a)(51).

23.    Vertex International Group, LLC ("Vertex") was a Wyoming limited liability corporation formed in November 2011 and administratively dissolved in January 2013.  Vertex was one of the shell companies that Welch and Bryant used to offer and sell securities of Global Energy.  Vertex transacted business from, and operated "boiler-room" call centers for sales agents in Woodland Hills and Northridge, California.  Bryant was the managing member of Vertex.

24.    On September 4, 2013, the state of Wisconsin, Department of Financial Institutions, Division of Securities ordered Vertex to cease and desist from further offers or sales of securities in Wisconsin and from transacting business as a broker-dealer in Wisconsin unless registered.

25.    Bechtel Advisory Group, Inc. ("Bechtel") was a Wyoming corporation formed in 2013 and administratively dissolved in March 2014.  Bechtel was one of the shell companies that Welch, Bryant and Knight used to offer and sell securities of Global Energy and New Global.  Bechtel transacted business from and operated

"boiler-room" call centers for sales agents in Northridge, California.  Bryant was the president of Bechtel.

26.    On January 8, 2016, the state of California, Business, Consumer Services and Housing Agency, Department of Business Oversight ordered Bryant, Vertex, and Bechtel to desist and refrain from acting as a broker-dealer or engaging in broker-dealer activities, based on their conduct in the sale of the securities of Global Energy.

## FACTUAL ALLEGATIONS

## I.    WELCH, BRYANT, KNIGHT, BIO-GLOBAL, DEI, AND DED ILLEGALLY ACTED AS BROKERS OR DEALERS.

27.    Between November 2011 and July 2013, Welch and Bryant through Vertex and Bechtel acted as unregistered broker-dealers effecting transactions in the securities of Global Energy.  Between June 2013 and May 2015, Welch, Bryant, Bio-Global, Knight, DEI and DED acted as unregistered broker-dealers effecting transactions in the securities of New Global.

28.    Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), makes it unlawful for any person or entity to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of any security, unless such broker or dealer is registered with the SEC.

29.    Section 3(a)(4) of the Exchange Act, 15 U.S.C. § 78c(a)(4), defines a broker as any person engaged in the business of effecting transactions in securities for the accounts of others.

30.    Section 3(a)(5) of the Exchange Act, 15 U.S.C. § 78c(a)(5), defines a dealer as any person engaged in the business of buying and selling securities for such person's own account through a broker or otherwise.

31.    During all times relevant to the Complaint, Welch, Bryant, Knight, Bio-Global, DEI and DED were not registered as brokers or dealers, or associated with

broker-dealers registered, with the SEC under Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

32.    Welch, Bryant, Knight, Bio-Global, DEI and DED acted with deliberate or reckless disregard of a regulatory requirement to be registered as a broker or dealer.

**A.    Welch and Bryant Acted as Brokers and Dealers in the Sale of the Securities of Global Energy through Vertex and Bechtel.**

33.    From 2011 through 2013, Welch and Bryant acted as brokers and dealers engaged in the business of effecting transactions in the securities of Global Energy, and other companies, for the accounts of others and for their own accounts.

34.    In May 2010, Welch sent an email to the chief executive officer of one of the companies whose securities he offered and sold, and admitted that he was a broker-dealer.  In that email, Welch stated, in part: "I have operated one of the larger private broker dealer networks with over 1,000 licensed reps and have been personally responsible for raising over $500,000,000 in capital."

35.    In 2011, Welch, through Bio-Global, owned or controlled 1,822,898 shares of Global Energy or approximately 5% of the outstanding shares of Global Energy.

36.    In 2011, Bryant owned or controlled at least 2,181,430 shares of Global Energy held in the name of a trust or approximately 6.5% of the outstanding shares of Global Energy.

37.    In 2011, Welch discussed with West, the CEO of Global Energy, making a public offering of common stock of Global Energy to investors.

38.    As part of the plan to sell Global Energy stock, Welch and Bryant set up a number of shell companies, including but not limited to Vertex and Bechtel, through which they offered and sold the shares of Global Energy and received money from investors.

COMPLAINT                                    9

**1.    Vertex Sold Shares of Global Energy.**

39.    Bryant caused Vertex to be incorporated in 2011 to act as a broker or dealer effecting transactions in the securities of Global Energy.

40.    Welch and Bryant controlled Vertex.

41.    Bryant opened a bank account for Vertex on which Bryant was the sole signatory.  Bryant used part of Vertex's Global Energy sales proceeds to pay his personal expenses.

42.    Welch and Bryant recruited sales agents for Vertex to generally solicit public investors to purchase Global Energy securities, using cold calls and investor lead lists.

43.    Welch and Bryant provided scripts, exemplars of email communications, and information about the merits of the investment in Global Energy's securities to the Vertex sales agents with the intention that the sales agents use the information and materials to offer and sell the securities of Global Energy to prospective investors. Welch and Bryant set the price at which the securities were sold by Vertex sales agents.

44.    At the direction of Welch or Bryant, the Vertex sales agents made telephone calls and sent email messages actively soliciting prospective investors that were identified from lead lists.  They sent stock purchase agreements to investors by courier, and requested return of the agreements with payment to Vertex by mail to its address in California.

45.    Some of the Vertex sales agents used aggressive sales tactics pressuring investors to purchase the stock.

46.    Welch and Bryant, through Vertex, Bechtel, or other entities that they controlled, paid transaction-based compensation or commissions up to 40% to the sales agents for selling the Global Energy shares.

47.    After putting the sales structure in place, Welch sent an email to West and others on November 21, 2011 advising that he and Bryant were making

arrangements to call "all of our [] clients and all of our JV [Joint Venture] clients and see[] what their level of interest is in acquiring Pre-Public stock in GETG . . . we are offering it at .25 a share. . . . When we go public. . . GETG[] need[s] to have some fairly sterile accounting for the reverse merger . . . thus . . . GETG is not selling or paying any fees for the sale of its PRIVATE Stock."

48.     Vertex sales agent began soliciting investors and received payments from investors starting in December 2011.

49.     Between February 2012 and May 2013, Vertex acquired approximately 22,002,428 shares of Global Energy from at least eleven third-parties, and held the shares in the name of Vertex.  Vertex acquired 1,022,898 of these Global Energy shares from Bio-Global.

50.     Between November 2011 and September 21, 2012, Welch and Bryant, through Vertex, effected transactions in, and offered and sold approximately 9,245,560 shares of Global Energy in approximately 253 transactions with investors located in numerous states, including within this judicial district, for approximately $1,992,597.  After Vertex received payment from investors for the purchase of Global Energy stock, Welch and Bryant arranged for Vertex to deliver the shares to the investors by courier or the mails.

51.     Between September 26, 2012 and July 2013, Welch and Bryant, through Vertex, effected transactions in and offered and sold approximately 6,262,480 shares of Global Energy in approximately 255 transactions with investors located in numerous states, including within this judicial district, for approximately $1,516,870.

52.     Vertex used sales agents to effect transactions in, induce and attempt to induce the purchase or sale of the securities of Global Energy that it acquired from third-parties.  None of the Vertex sales agents were registered or associated with broker-dealers registered with the SEC.

**2.     Bechtel Sold Shares of Global Energy.**

53.     Bryant caused Bechtel to be incorporated in January 2013 to act as a

broker or dealer effecting transactions in the securities of Global Energy.

54.    Welch and Bryant controlled Bechtel.

55.    Bryant opened a bank account for Bechtel on which Bryant was the sole signatory.  Bryant used part of Bechtel's Global Energy sales proceeds to pay his personal expenses.

56.    Bryant and Welch recruited many of the Vertex sales agents to work for Bechtel to offer and sell the securities of Global Energy, through general solicitation using cold calling and investor lead lists.

57.    On or about March 2, 2013, Vertex sent an email to its sales agents reminding them "that this Friday (3/8/13) will be the *last day* that the Woodland Hills Vertex office will be accepting mail or fedex, and the last time the phones will be answered. . . . You don't have to necessarily tell them about Bechtel ***just yet*** (unless they are ready to purchase more shares **right now**).  It might be better to wait until we are able to offer ***New Global*** shares to bring up Bechtel as a new entity."  (Emphasis in original.)

58.    Welch and Bryant provided scripts, exemplars of email communications, and information about the merits of the investment in Global Energy's securities to the Bechtel sales agents with the intention that the sales agents use the information and materials to offer and sell the securities of Global Energy to prospective investors.  Welch and Bryant set the price at which the securities were sold by Bechtel sales agents.

59.    At the direction of Welch or Bryant, the Bechtel sales agents made telephone calls and sent email messages actively soliciting prospective investors that were identified from lead lists.  They sent stock purchase agreements to investors by courier, and requested return of the agreements with payment to Bechtel by mail to its address in California.

60.    Some of the Bechtel sales agents used aggressive sales tactics pressuring investors to purchase Global Energy stock.

61.    Between approximately March and July 2013, Welch and Bryant, through Bechtel, offered and sold approximately 2,375,250 shares of Global Energy, which were held in the name of Vertex, in approximately 69 transactions with investors for approximately $540,982.  After Bechtel received payment from investors for the purchase of Global Energy stock, Welch and Bryant arranged for Vertex to deliver the shares to the investors by courier or the mails.

62.    Bechtel used sales agents to effect transactions in, induce and attempt to induce the purchase or sale of the securities of Global Energy that it acquired from third-parties.  None of the Bechtel sales agents were registered or associated with broker-dealers registered with the SEC.

**3.    Welch and Bryant were Brokers and Dealers Through Their Use and Control of Vertex and Bechtel.**

63.    Welch and Bryant and the entities they controlled did not respect corporate formalities.  Rather, they took numerous actions demonstrating that this was a common enterprise, including:

a.  Vertex acquired some of the Global Energy shares from persons or entities that were controlled by Welch and Bryant, but did not pay those persons or entities prior to selling the shares to the public;

b.  Vertex acquired Global Energy shares from Bio-Global on February 1, 2012, but did not make any payments to Bio-Global until nearly five months later on June 28, 2012;

c.  Welch and Bryant, acting through Vertex, acquired shares from other related parties, such as West and his daughter, but did not pay those parties prior to selling the shares to the public; and

d.  Vertex transferred Global Energy shares that it owned to investors who purchased the shares from and paid Bechtel.

64.    Welch, directly or indirectly, effected transactions, induced, or attempted to induce sales of the securities of Global Energy, through sales made by Vertex,

Bechtel and various sales agents, while Welch was not registered as or associated with a broker or dealer registered with the SEC.  Welch acted as a dealer through Vertex when it offered and sold securities for its own account, and acted as a broker through Vertex and Bechtel when they offered and sold securities for the accounts of others.

65.    Bryant, directly or indirectly, effected transactions, induced or attempted to induce sales of the securities of Global Energy, through sales made by Vertex, Bechtel and various sales agents, while Bryant was not registered as or associated with a broker or dealer registered with the SEC.  Bryant acted as a dealer through Vertex when it offered and sold securities for its own account, and acted as a broker through Vertex and Bechtel when they offered and sold securities for the accounts of others.

66.    Between September 26, 2012 and July 2013, Welch and Bryant received gross pecuniary gain of approximately $2,057,852 from sales of Global Energy securities by Vertex and Bechtel.

**B.     Welch, Bryant, Knight, DEI and DED Acted as Unregistered Brokers and Dealers, and Bio-Global Acted as an Unregistered Dealer in the Sale of the Securities of New Global.**

67.    From June 2013 through May 2016, Welch, Bryant, Knight, DEI, and DED, directly or indirectly, acted as brokers and dealers engaged in the business of offering and selling securities of New Global and other companies, for the accounts of others and for their own accounts, by means of interstate commerce or the mails.

68.    From June 2013 through May 2016, Bio-Global, directly or indirectly, acted as a dealer engaged in the business of offering and selling securities of New Global and other companies, for its own account, by means of interstate commerce or the mails.

69.    At all times relevant to the Complaint, Welch, Bryant, Knight, Bio-Global, DEI, DED, and the sales agents that they used to solicit investors, were not

registered as brokers-dealers or associated with broker-dealers registered with the SEC under Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

## 1.    Bio-Global, Welch and Bryant Acted As Unregistered Dealers that Acquired and Sold New Global Shares for their Own Account.

70.    Welch and Bryant controlled Bio-Global.  They were officers of Bio-Global and made decisions for the company.

71.    Welch was a signatory on Bio-Global's bank account and used the account to pay his personal expenses.

72.    The knowledge of Welch and Bryant is attributed to Bio-Global.

73.    Bio-Global entered into three promissory notes with New Global in January 2012, November 2012, and July 2013, through which it agreed to loan a total of $700,000 to New Global.  In each agreement, New Global gave Bio-Global the right to convert the principal amounts due under the loan agreements into common shares of New Global and to exercise warrants for more shares.

74.    Between September 2012 and June 2014, Bio-Global converted the three promissory notes into 2,500,000 common shares of New Global, even though Bio-Global had not fully provided the money to New Global required by the promissory notes.

75.    In or about November 2013, Bio-Global acquired an additional 500,000 New Global common shares from New Global's former president.

76.    Between August 5, 2013 and June 11, 2014, Bio-Global sold 1,340,230 of its New Global common shares through DEI, which sold the shares to public investors.

77.    DEI did not pay Bio-Global the purported purchase price at the time of delivery of the shares.  Instead, DEI made a series of payments between November 27, 2013 and October 10, 2014, which totaled approximately $879,347 to Bio-Global out of the proceeds of its stock sales.

78.    During 2015, Bio-Global acquired 20,000 preferred shares from New

Global.

79.   On or about March 3, 2015, Bio-Global sold 4,160 preferred shares through DEI, which sold the shares to public investors.

80.   Between March and August 2015, Bio-Global sold 15,840 preferred shares through DED, which sold the shares to public investors.

81.   Welch, Bryant, and Bio-Global acted as dealers in the sales of New Global common and preferred stock while each of them was not registered with the SEC as a broker-dealer in violation of Section 15(a)(1) of the Exchange Act.

82.   Welch and Bryant are also liable under Section 20(b) of the Exchange Act for Bio-Global's actions as an unregistered dealer because they used the company to violate the broker-dealer registration provisions of Section 15(a)(1) of the Exchange Act.

### 2.   DEI, Welch, Bryant and Knight Acted As Unregistered Brokers and Dealers in the Sale of the Securities of New Global.

83.   Knight caused DEI to be incorporated in May 2013, to offer and sell the securities of New Global that it obtained from Bio-Global.

84.   Knight was an officer of DEI and its owner, and the sole signatory on DEI's bank account.  Knight used part of the New Global sales proceeds to pay his personal expenses.

85.   In addition to Knight, Welch and Bryant controlled DEI.  Knight, Welch and Bryant made decisions for DEI about the means and manner of sale of New Global securities.  The knowledge of Knight, Welch and Bryant is attributed to DEI.

86.   Welch, Bryant and Knight, and the entities they controlled, including DEI, did not respect corporate formalities.

87.   Between June 2013 and March 2015, DEI acquired 1,340,230 common shares and 4,160 preferred shares of New Global from Bio-Global.

88.   On or about October 28, 2014, DEI acquired 450,000 common shares directly from New Global.

89.    Starting in or about June 2013, DEI sold New Global shares through Bechtel and its sales agents.

90.    Welch and Bryant recruited Bechtel and sales agents to sell New Global securities acquired by DEI.  The sales agents made general solicitation using cold calling and investor lead lists.

91.    Welch and Bryant provided scripts, exemplars of email communications, and information about the merits of the investment in New Global's securities to the Bechtel sales agents with the intention that the sales agents use the information and materials to offer and sell the securities of New Global to prospective investors. Welch and Bryant set the price at which the securities were sold by Bechtel sales agents.

92.    Some of the Bechtel sales agents used aggressive sales tactics pressuring investors to purchase New Global stock.

93.    Bechtel requested that some investors execute stock purchase agreements with Bechtel and send payments to Bechtel's office in Northridge, California.

94.    To fulfil Bechtel's sales agreements, DEI transferred ownership of its New Global shares to investors who had signed stock purchase agreements with and paid Bechtel.

95.    DEI never received any payment from Bechtel.

96.    DEI and Knight also received stock purchase agreements and payments from some investors by mail to DEI's office in Boulder Colorado.

97.    Knight approved the sales transactions by Bechtel and DEI, and directed the transfer agent to deliver the stock certificates to investors.

98.    Between approximately June 2013 and October 2014, DEI and Bechtel sold approximately 889,989 common shares of New Global in approximately 178 transactions with investors.  Bechtel received approximately $509,275 and DEI received approximately $1,195,749 from the sales.

99.   On March 3, 2015, DEI acquired 4,160 preferred shares of New Global from Bio-Global.

100.   DEI, indirectly sold, through DED and its sales agents, 4,160 preferred shares of New Global.

101.   Knight, Welch and Bryant, through DEI, or other entities that they controlled, paid transaction-based compensation or commissions to the Bechtel sales agents for selling the New Global shares.

102.    Welch, Bryant, Knight, and DEI acted as a broker and dealer in its sales of New Global common and preferred stock while not registered with the SEC as a broker-dealer in violation of Section 15(a)(1) of the Exchange Act.

103.   Welch, Bryant, and Knight are also liable under Section 20(b) of the Exchange Act for DEI's actions as an unregistered broker-dealer, because they used the company to violate the broker-dealer registration provisions of Section 15(a)(1) of the Exchange Act.

### 3.    DED, Welch, Bryant and Knight Acted As Unregistered Brokers and Dealers in the Sale of the Securities of New Global.

104.   Bryant caused DED to be incorporated in 2013 to act as a broker or dealer effecting transactions in the securities of New Global.

105.   Bryant is the owner of DED, and is a signatory on DED's bank accounts. Bryant used part of DED's New Global sales proceeds to pay his personal expenses.

106.   Welch, Bryant and Knight controlled DED.  Welch, Bryant and Knight made decisions for DED about the means and manner of sale of New Global securities.  The knowledge of Welch, Bryant and Knight is attributed to DEI.

107.   Welch, Bryant, Knight, and the entities they controlled, including DED, did not respect corporate formalities.

108.   Welch and Bryant recruited sales agents for DED, including through Craig's List, to solicit public investors to purchase New Global securities, and operated "boiler room" call centers in California and Costa Rica.  The sales agents

used cold calling and investor lead lists to solicit investors.

109.   Welch and Bryant provided scripts, exemplars of email communications, and information about the merits of the investment in New Global's securities to the DED sales agents with the intention that the sales agents use the information and materials to offer and sell the securities of New Global to prospective investors. Welch and Bryant set the price at which the securities were sold by DED sales agents.

110.   At the direction of Welch or Bryant, the sales agents made telephone calls and sent email messages actively soliciting prospective investors that were identified from lead lists.  They sent stock purchase agreements to investors by courier, and requested return of the agreements with payment to DED by mail to its address in California.

111.   DED used sales agents to effect transactions in, induce and attempt to induce the purchase or sale of the securities of New Global that it acquired.  None of the DED sales agents were registered or associated with broker-dealers registered with the SEC.

112.   Some of the DED sales agents used aggressive sales tactics pressuring investors to purchase the stock.

113.   Welch, Bryant, and Knight through DED, DEI, or other entities that they controlled, paid transaction-based compensation or commissions to the DED sales agents for selling the New Global shares.

114.   In March and April 2014, DED acquired 44,000 shares of New Global from DEI.

115.   In April 2014, DED effected transactions and sold 44,000 New Global shares to investors for its own account as a dealer.

116.   Between June 2014 and May 2015, DED effected transactions and sold approximately 785,534 New Global shares on behalf of DEI as a broker.

117.   On or about March 3, 2015, DED effected transactions and sold 4,160 preferred shares of New Global on behalf of DEI as a broker.

118.   Between March and August 2015, DED acquired 15,840 preferred shares of New Global from Bio-Global.

119.   Between March and September 2015, DED effected transactions and sold the 15,840 preferred shares of New Global as a broker-dealer.

120.   During 2015, DED acquired and sold hundreds of thousands of New Global common shares from investors as a dealer.

121.   DED, Welch, Bryant and Knight continued to sell New Global common shares through at least May 2016.

122.   Between March 2014 and October 2015, DED sold approximately 1,255,067 common shares of New Global in approximately 317 transactions with investors and received approximately $2,574,195.  These sales included DED's resales of New Global common stock that it purchased from investors.

123.   Between October 2014 and October 2015, DED sold 20,000 preferred shares in approximately 154 transactions with investors and received approximately $1,843,900.

124.   Between March 2014 and January 2015, DED transferred to DEI approximately $475,754 from the proceeds of its sales of New Global common and preferred stock.

125.   Between August 2014 and November 2015, DED transferred approximately $2,275,374 to Bio-Global from the proceeds of the New Global common and preferred stock sales.

126.   Welch, Bryant, Knight and DED effected transactions, induced or attempted to induce sales of the securities of New Global, while each of them was not registered as, or associated with a broker or dealer registered with the SEC in violation of Section 15(a)(1) of the Exchange Act.

127.   Welch, Bryant, and Knight are also liable under Section 20(b) of the Exchange Act for DED's actions as an unregistered broker-dealer, because they used the company to violate the broker-dealer registration provisions of Section 15(a)(1) of

the Exchange Act.

128.    Welch, Bryant and Knight collaborated in a joint effort to effect transactions and sell the securities of New Global.

## II.    WELCH, BRYANT AND KNIGHT VIOLATED SECTION 20(b) OF THE EXCHANGE ACT.

129.    Section 20(b) of the Exchange Act, 15 U.S.C. §78t(b), provides that it is unlawful for any person, directly or indirectly to do any act or thing which it would be unlawful for such person to do under the provisions of the Exchange Act through or by means of any other person.

130.    Welch, Bryant, and Knight are liable under Section 20(b) of the Exchange Act,15 U.S.C. § 78t(b), for violations of the broker-dealer registration provisions of Section 15(a)(1) of the Exchange Act, because they, directly or indirectly, acted as brokers and dealers through or by the means of Bio-Global, DED, DEI, Vertex, Bechtel, and various sales agents, while Welch, Bryant and Knight and their sales agents were not registered as broker-dealers or associated with broker-dealers registered with the SEC.

## III.    WELCH, BRYANT, KNIGHT, BIO-GLOBAL, DEI, DED, WEST AND NEW GLOBAL VIOLATED SECTION 5 OF THE SECURITIES ACT BY MAKING UNREGISTERED OFFERS AND SALES OF THE SECURITIES OF GLOBAL ENERGY OR NEW GLOBAL.

131.    Section 5 of the Securities Act, 15 U.S.C. § 77e(a) and(c), makes it unlawful for any person, directly or indirectly, to use interstate commerce or the mails, to sell a security unless a registration statement is in effect as to the security, or to offer to sell a security unless a registration statement has been filed as to such security.

## A.    Welch and Bryant Made Unregistered Offers and Sales of Global Energy Securities through Vertex and Bechtel.

132.    Prior to acquiring title to any Global Energy shares, Vertex and its sales

agents began soliciting investors and receiving stock purchase agreements and money for the purchase of the shares as early as December 2011.

133.   Between February 2012 and May 2013, Welch and Bryant, through Vertex, acquired approximately 22,002,428 shares of Global Energy from at least eleven third-parties, which included 1,022,898 shares from Bio-Global, shares from several entities controlled by Bryant, and shares from West and his daughter, all of whom acquired the shares directly from Global Energy.

134.   Between December 2011 and July 2013, Welch and Bryant, through Vertex and Bechtel, offered and sold at least 20,868,571 shares of Global Energy to more than 300 investors located throughout the United States, including investors within this judicial district, and received approximately $4,050,449.

135.   Of the amount of stock sales described above, between September 26, 2012 and July 2013, Welch and Bryant, through Vertex and Bechtel, offered and sold approximately 9,311,511 shares for proceeds of approximately $2,110,852.

136.   Welch and Bryant, through Vertex, Bechtel, and their sales agents used the means of interstate commerce or the mails in the offers and sales of Global Energy securities, to solicit investors, collect payments for the stock purchases, and deliver the stock certificates to investors throughout the United States, including investors located in this judicial district.

137.   No registration statement was filed or in effect for offers and sales of Global Energy securities by Welch and Bryant through Vertex and Bechtel.

138.   Welch and Bryant were indirect sellers due to their participation in the offers and sales of Global Energy securities by Vertex and Bechtel, because they controlled Vertex and Bechtel, acquired the shares to be sold, and made decisions about the number of share to be sold, the price, and the information to be sent to prospective investors.  Welch and Bryant also hired the sales agents who solicited the investors and ensured that the sales agents were paid commissions.

139.   Welch and Bryant were necessary participants and substantial factors in

the offers or sales of Global Energy securities by Vertex and Bechtel. But for the actions of Welch and Bryant in acquiring the securities for Vertex, hiring the sales agents, providing information on the investment to the sales agents to use in the offer and sale, and arranging for the delivery of the stock certificates to investors, the offers and sales would not have occurred.

140. Welch and Bio-Global were affiliates of Global Energy.

141. In early 2012, Bio-Global owned more than 5% of the outstanding shares of Global Energy.

142. Bryant was an affiliate of Global Energy.

143. In early 2012, Bryant controlled more than 5% of the outstanding shares of Global Energy.

144. Welch and Bryant acted as statutory underwriters engaged in the distribution of Global Energy securities to public investors.

145. Welch and Bryant recklessly disregarded the statutory requirement that each offer or sale of a security must be the subject of a registration statement filed or in effect with the SEC.

**B.   New Global and West Made Unregistered Offers and Sales of the Securities of New Global to Bio-Global and DEI.**

146. New Global offered and sold approximately 400,000 and 440,230 shares of common stock to Bio-Global on June 25, 2013 and June 11, 2014 respectively, through loan conversions.

147. New Global offered and sold approximately 450,000 shares to DEI on October 28, 2014.

148. Between February and September 2015, New Global offered and sold 20,000 shares of preferred stock to Bio-Global.

149. West was the CEO and sole director of New Global and controlled its operations.

150. New Global and West, directly or indirectly, used the means of interstate

commerce or the mails to offer and sell New Global common and preferred shares and deliver the share certificates to Bio-Global and DEI.

151.   No registration statement was filed or in effect for offers and sales of New Global securities by New Global and West.

152.   West was an indirect seller of New Global common and preferred shares to Bio-Global and DEI because he negotiated the terms of the sales and authorized and approved the transactions as the sole director of New Global.

153.   West was a necessary participant and substantial factor in New Global's offers and sales of securities to Bio-Global and DEI.  But for West's approval of the sales to Bio-Global and DEI, and the subsequent resales by Bio-Global and DEI to public investors, the offers and sales would not have occurred.

154.   New Global received approximately $1,925,800 from Bio-Global for the stock and warrants it acquired.  Bio-Global used money received from DEI's and DED's New Global stock sales to provide ongoing funding to New Global.

155.   New Global paid approximately $430,601 to West or his law firm out of the funds received from Bio-Global.

156.   West and New Global recklessly disregarded the statutory requirement that each offer or sale of a security must be the subject of a registration statement filed or in effect with the SEC.

**C.   Bio-Global, Welch, Bryant, Knight, DEI, DED, and West Made Unregistered Offers and Sales of the Securities of New Global.**

157.   On or about August 5, 2013, Bio-Global, Welch and Bryant offered and sold 400,000 shares of New Global common stock to DEI that Bio-Global acquired directly from New Global.

158.   DEI and Knight, assisted by Welch, Bryant, Bechtel, and their sales agents, offered and sold the 400,000 shares of New Global between June and October 2013, through general solicitation to public investors located throughout the United States and within this judicial district.

159.   On or about December 17, 2013, Bio-Global, Welch, and Bryant offered and sold 500,000 shares of New Global acquired from the former president of New Global to DEI.

160.   DEI and Knight, assisted by DED, Welch and Bryant, offered and sold the 500,000 shares of New Global between November 2013 and April 2014, through general solicitation to public investors located throughout the United States and within this judicial district.

161.   On or about June 11, 2014, Bio-Global, Welch and Bryant offered and sold 440,230 shares of New Global common stock acquired directly from New Global to DEI.

162.   DEI and Knight, assisted by DED, Welch and Bryant, offered and sold the 440,230 shares between June and October 2014, through general solicitations to public investors located throughout the United States and within this judicial district.

163.   On or about October 28, 2014, DEI acquired 450,000 shares of common stock directly from New Global.

164.   DEI and Knight, assisted by DED, Welch, and Bryant, offered and sold the 450,000 shares between November 2014 and March 2015, through general solicitation to public investors located throughout the United States and within this judicial district.

165.   During 2015, DED acquired approximately 419,387 New Global common shares from investors, who previously purchased the shares from the Defendants.

166.   DED, assisted by Welch, Bryant, and Knight, offered and sold the 419,387 shares during 2015, through general solicitation to public investors located throughout the United States and within this judicial district

167.   Between February and August 2015, Bio-Global acquired 20,000 preferred shares directly from New Global.

168.   On or about March 3, 2015, Bio-Global, Welch and Bryant offered and

sold 4,160 New Global preferred shares to DEI.

169.  Between March and September 2015, Bio-Global, Welch and Bryant offered and sold 15,840 preferred shares of New Global to DED.

170.  DEI and DED, assisted by Knight, Welch, and Bryant, offered and sold 20,000 preferred shares between approximately February and September 2015, through general solicitation to public investors located throughout the United States and within this judicial district.

171.  As described above, DEI, with the assistance of Bechtel, sold approximately 889,989 New Global common shares between June 2013 and October 2014, in approximately 178 transactions with investors for proceeds of approximately $1,705,024.

172.  As described above, DED sold approximately 1,255,067 common shares between June 2013 and October 2015, in approximately 317 transactions with investors for proceeds of approximately $2,574,195.

173.  As described above, DEI and DED sold 20,000 preferred New Global shares between March 2015 and October 2015 in approximately 154 transactions with investors for proceeds of approximately $1,843,900.

174.  DEI and DED, directly or indirectly, used the means of interstate commerce or the mails in the offers and sales of New Global securities, to solicit investors, collect payments for the stock, and deliver the stock certificates to investors throughout the United States, including investors located in this judicial district.

175.  Welch, Bryant, and Knight, directly or indirectly, used the means of interstate commerce or the mails in the offer and sale of New Global securities by, among other things, instructing sales agents to contact prospective investors by telephone or email, sending the stock purchase agreements to investors by email, courier or mail, directing investors to mail checks for the purchase of the securities to DEI at its address in Colorado or to Bechtel or DED at addresses in California, and directing the transfer agents in Florida or Colorado to mail the stock certificates to

DED in California for delivery to the investors.

176. No registration statement was filed or in effect for offers and sales of common stock or preferred stock of New Global by DEI and DED.

177. Welch, Bryant, Knight, and Bio-Global were indirect sellers due to their participation in the offers and sales of New Global common and preferred shares by Bechtel, DEI, and DED, because they controlled DEI, DED, and Bechtel, acquired the shares to be sold, and made decisions about the number of share to be sold, the price, and the information to be sent to prospective investors. Welch and Bryant also hired the sales agents who solicited the investors and ensured that the sales agents were paid commissions.

178. Welch, Bryant, Knight, and Bio-Global were necessary participants and substantial factors in the offers or sales of New Global common and preferred shares by Bechtel, DEI, and DED. But for the actions of Welch, Bryant, Knight and Bio-Global in acquiring the securities for DEI or DED, hiring the sales agents, providing information on the investment to the sales agents to use in the offer and sale, and arranging for the delivery of the stock certificates to investors, the offers and sales would not have occurred.

179. West was an indirect seller due to his participation in the sales by Bio-Global, Bechtel, DEI and DED. West, on behalf of New Global, entered into the loan agreements with Bio-Global, which allowed Bio-Global to obtain the shares that it then immediately resold to the public investors through Bechtel, DEI and DED. West provided the new issuance instructions to the transfer agent to issue the shares to Bio-Global and DEI; and also approved of the immediate transfers of Bio-Global's common and preferred shares to DEI and DED, and subsequent sales and distributions of common shares and preferred shares by DEI and DED to public investors. But for West's actions, the public distribution of New Global securities could not have occurred.

180. West was a necessary participant and substantial factor in the resales of

New Global stock by Bio-Global, Bechtel, DEI, and DED. West, on behalf of New Global, entered into the loan agreements with Bio-Global, which allowed Bio-Global to obtain the shares that it then immediately resold to the public investors through Bechtel, DEI and DED.  West provided the new issuance instructions to the transfer agent to issue the shares to Bio-Global and DEI; and also approved of the immediate transfers of Bio-Global's common and preferred shares to DEI and DED, and subsequent sales and distributions of common shares and preferred shares by DEI and DED to public investors.  But for West's actions, the public distribution of New Global securities could not have occurred.

181.   Bio-Global, Welch and Bryant were affiliates of New Global.

182.   Starting in November 2012, Bio-Global owned more than 5% of the outstanding shares of New Global, and supplied substantially all of the operating capital for New Global.

183.   DEI and Knight were affiliates of New Global.

184.   Starting in 2013, DEI owned more than 5% of the outstanding shares of New Global.

185.   Welch, Bryant, Knight, Bio-Global, DEI, and DED were statutory underwriters effecting the public distribution of New Global securities.

186.   All of the Defendants recklessly disregarded the statutory requirement that each offer or sale of a security must be the subject of a registration statement filed or in effect with the SEC.

## FIRST CLAIM FOR RELIEF

### Unregistered Broker-Dealer

### Violation of Section 15(a) of the Exchange Act

### (Against Defendants Welch, Bryant, Knight, Bio-Global, DEI and DED)

187.   The SEC realleges and incorporates by reference paragraphs 1 through 186 above.

188.   In connection with their offer and sale of the securities of Global Energy

or New Global discussed above, Welch, Bryant, Knight, DEI, and DED acted as brokers and dealers engaged in the regular business of effecting transactions in securities for the account of others or buying and selling securities for their own accounts.

189.   In connection with the offer and sale of the securities of New Global discussed above, Bio-Global acted as a dealer engaged in the regular business of effecting transactions in securities for its own account.

190.   Welch, Bryant, Knight, Bio-Global, DEI, and DED made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of securities while they were not registered with the SEC as a broker-dealer or associated with a broker-dealer registered with the SEC.

191.   By reason of the conduct described above, Defendants Welch, Bryant, Knight, Bio-Global, DEI, and DED violated, and, unless restrained and enjoined, will continue to violate, Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

## SECOND CLAIM FOR RELIEF

### Liability under Section 20(b) of the Exchange Act
### for Violations of Section 15(a) of the Exchange Act
### (Against Defendants Welch, Bryant and Knight)

192.   The SEC realleges and incorporates by reference paragraphs 1 through 186 above.

193.   Defendants Welch, Bryant and Knight violated Section 20(b) of the Exchange Act, 15 U.S.C. § 78t(b), by, directly or indirectly, effecting transactions in the securities of Global Energy or New Global through or by means of Bio-Global, DEI, DED, Vertex, Bechtel, or their sales agents, when the Defendants were not registered as brokers or dealers, which is unlawful under Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

194.   Welch, Bryant and Knight engaged in acts through or by means of third

parties that would have been unlawful for Welch, Bryant and Knight to do themselves under Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

195.   By reason of the conduct described above, Defendants Welch, Bryant, and Knight violated, and, unless restrained and enjoined, will continue to violate, Section 20(b) of the Exchange Act, 15 U.S.C. § 78t(b).

## THIRD CLAIM FOR RELIEF

### Unregistered Offer and Sale of Securities

### Violations of Sections 5(a) and 5(c) of the Securities Act

### (Against Defendants Welch, Bryant, Knight, Bio-Global, DEI, DED, West and New Global)

196.   The SEC realleges and incorporates by reference paragraphs 1 through 186 above.

197.   The shares of Global Energy and New Global that the Defendants offered and sold to public investors are "securities" as that term is defined in Section 2(a)(1) of the Securities Act and Section 2(10) the Exchange Act, 15 U.S. C. §§ 77b(a)(1) and 78(b)(10).

198.   Welch, Bryant, Knight, Bio-Global, DEI, DED, West, and New Global, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of a prospectus or otherwise, or caused to be carried through the mails or in interstate commerce by any means or instruments of transportation, securities for the purpose of sale or for delivery after sale when no registration statement was in effect as to those securities.

199.   Welch, Bryant, Knight, Bio-Global, DEI, DED, West and New Global, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy securities through the use or medium of a prospectus or otherwise, when no registration statement had been filed for those securities.

1    200.   By reason of the conduct described above, Welch, Bryant, Knight, Bio-
2   Global, DEI, DED, West and New Global violated and, unless restrained and
3   enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act , 15
4   U.S.C. §§ 77e(a) and 77e(c).

5                          **PRAYER FOR RELIEF**
6        WHEREFORE, the SEC respectfully requests that the Court:
7                                **I.**
8        Find that each of the Defendants committed the violations alleged in this
9   Complaint;
10                               **II.**
11       Enter injunctions, in a form consistent with Rule 65(d) of the Federal Rules of
12  Civil Procedure, permanently restraining and enjoining each of the Defendants from
13  violating, directly or indirectly, the laws and rules alleged against them in this
14  Complaint;
15                              **III.**
16       Order the Defendants to disgorge any and all ill-gotten gains, together with
17  pre-judgment interest, derived from the improper conduct alleged in this Complaint;
18                              **IV.**
19       Order that each of the Defendants pay civil money penalties pursuant to
20  Section 20(d) of the Securities Act,15 U.S.C. § 77t(d), and Section 21(d) of the
21  Exchange Act, 15 U.S.C. § 78u(d), in an amount to be determined by the Court, plus
22  post-judgment interest;
23                               **V.**
24       Order all of the Defendants to be permanently restrained and enjoined from
25  engaging in any offering of a penny stock pursuant to Section 20(g) of the Securities
26  Act, 15 U.S.C. § 77t(g), and Section 21(d)(6) of the Exchange Act, 15 U.S.C. §
27  78u(d)(6);
28

**VI.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

**VII.**

Grant such other and further relief as this Court may determine to be just and necessary.

Dated:  September 27, 2017

Jury Trial Demand

Respectfully Submitted,


*/s/* Douglas M. Miller
Douglas M. Miller
Attorney for Plaintiff
Securities and Exchange Commission